IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JODY RENEE WATTS                                              PLAINTIFF

            v.                          Civil No. 11-2188

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                               DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Jody Watts, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I.      Procedural Background:

The plaintiff filed her applications for SSI and DIB on April 16, 2010[1], alleging an onset date of September 1, 2009, due to depression, bipolar disorder, and anxiety.  Tr. 146-156, 217, 260-261, 279.  The Commissioner denied Plaintiff's application initially and on reconsideration.  Tr. 89, 92, 96, 98.  An administrative hearing was held on January 5, 2011.  Tr. 26-63.  Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 33 years old and possessed a Bachelor's Degree in Criminal Justice.  Tr. 32, 35.  Plaintiff had past relevant work ("PRW") experience as hand packager, cafeteria food service worker, fitting room attendant, family support specialist, substitute teacher, cashier, and psychiatric aid.  Tr. 204, 242-249.

---

[1]Plaintiff filed a prior application for benefits on April 2, 2008, alleging an onset date of November 1, 2007, due to bipolar disorder, anxiety, possible schizophrenia, attention deficit disorder, coordination problems, headaches, hand and feet pain, and thyroid problems.  Ultimately, her denial of benefits was appealed to this Court in 2009, and the decision was affirmed by this Court on November 4, 2010.  Memorandum Opinion and Judgment, Jody Renee Watts v. Astrue (No. 2:09-cv-02138), ECF. Nos. 13, 14.  The matter was not appealed further.

On April 11, 2011, the ALJ found Plaintiff's attention deficit hyperactivity disorder ("ADHD"), personality disorder, and learning disorder to be severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 11-13. After partially discrediting Plaintiff's subjective complaints, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a

> full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember, and carry out simple, routine, and repetitive tasks wherein complexity of tasks is learned and performed by rote. The claimant can respond appropriately to supervision that is simple, direct, and concrete, to co-workers, and to usual work situations, but can have only occasional contact with the general public. She can perform low-stress work (defined as occasional decision-making and occasional changes in work place settings). The claimant cannot perform production work or assembly work.

Tr. 13-19. With the assistance of a vocational expert, the ALJ found plaintiff could perform work as an industrial cleaner. cook helper and kitchen helper. Tr. 19-20.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on August 15, 2011. Tr. 1-3. Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 10, 11.

The Court has reviewed the entire record in this case, including the transcript of the administrative hearing, Plaintiff's medical records, the ALJ's opinion, and the appeal briefs filed by the parties. The complete set of facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

## II.    **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it

2

adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience.  *See* 20 C.F.R. § § 404.1520(a)- (f)(2003).  Only if the final stage is reached

does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § § 404.1520, 416.920 (2003).

### III.   Discussion:

Of particular concern to the undersigned in the ALJ's RFC assessment.  RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations).  Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace."  *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).  "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." *Id*.

The record reveals that Plaintiff was suffering from a mental impairment known as borderline personality disorder.  The evaluation of a mental impairment is often more complicated than the evaluation of a claimed physical impairment. *Andler v. Chater,* 100 F.3d 1389, 1393 (8th Cir. 1996). Evidence of symptom-free periods, which may negate the finding of a physical disability, do not compel

4

a finding that disability based on a mental disorder has ceased. *Id*. Mental illness can be extremely difficult to predict, and remissions are often of "uncertain duration and marked by the impending possibility of relapse." *Id.* Individuals suffering from mental disorders often have their lives structured to minimize stress and help control their symptoms, indicating that they may actually be more impaired than their symptoms indicate. *Hutsell v. Massanari,* 259 F.3d 707, 711 (8th Cir.2001); 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(E) (1999). This limited tolerance for stress is particularly relevant because a claimant's residual functional capacity is based on their ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir. 1982) (abrogated on other grounds).

By definition, borderline personality disorder ("BPD") is "a pervasive pattern of instability of interpersonal relationships, self-image, and affects, and marked impulsivity that begins by early adulthood and is present in a variety of contexts." *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 706-707 (4th ed. 2000). BPD patients are very sensitive to environmental circumstances and experience intense abandonment fears and inappropriate anger when faced with a realistic time-limited separation or when there are unavoidable changes in plans. *Id*. at 706. They also tend to have a pattern of unstable and intense relationships, at times idealizing potential caregivers or lovers. *Id*. at 706. And, they may suddenly change from the role of a needy supplicant for help to a righteous avenger of past mistreatment. Impulsivity is also a significant symptom of this disorder, resulting in an increased tendency to gamble, spend money irresponsibly, binge eat, abuse substances, engage in unsafe sex, and/or drive recklessly. *Id*. at 707. And, their poor judgment often results in a pattern of undermining themselves at the moment a goal is about to be realized. *Id*. at 708.

At the onset, we note that the medical evidence offered in this case differs greatly from the record presented to us in Plaintiff's prior case. And, while we are aware of our opinion in that case, we are not bound by that decision, as it related to a time period and involved medical evidence not currently before this Court. We will, however, refer to evidence dated prior to the time period relevant to this case where we find it to have bearing on Plaintiff's current mental status.

In May 2008, Dr. Kathleen Kralik diagnosed Plaintiff with provisional ADHD and personality disorder not otherwise specified. Tr. 307-315. She concluded that Plaintiff's ability to carry out activities of daily living were adequate for occupational purposes; her capacity to communicate and interact in a socially adequate manner was somewhat impaired but generally adequate for occupational purposes; her ability to communicate in an intelligible and effective manner was generally adequate; and, her capacity to cope with typical mental/cognitive demands of basic work-like tasks adequate. Dr. Kralik found Plaintiff's ability to attend and sustain concentration on basic work-like tasks adequate for occupational purposes, but noted that past employment had revealed intermittently and at times significantly impaired abilities in this area. Plaintiff seemed able to attend, concentrate and focus adequately, but she determined Plaintiff was likely disinclined to do so in light of her immaturity and personality issues. Dr. Kralik also opined that Plaintiff's capacity to sustain persistence in completing tasks was significantly impaired for occupational purposes, as was her ability to complete work like tasks within an acceptable time frame. She also concluded that malingering/exaggeration was likely present, but in association with her immaturity and dramatic personality features.

On April 9, 2009, Dr. Patricia Walz conducted a mental diagnostic evaluation of Plaintiff, diagnosing her with dysthymia and borderline personality disorder . Tr. 541-551. Plaintiff indicated that she performed some part-time jobs, but had problems with anger issues and getting along with others. She also claimed to be a cutter, confessing that she did it when she was really down or when she was bored. Plaintiff's MMPI results were consistent with the presence of a "psychotic valley" often seen in

6

people with significant psychological illness, which was usually chronic in nature and debilitating. Dr Walz indicated that people with this type of profile were often diagnosed with schizophrenia or schizoaffective disorder. She concluded that Plaintiff's social skills were significantly impaired, as she felt others were inconveniencing her on purpose.[2] Dr. Walz also opined that Plaintiff had marked limitations in the following areas: 1) making judgments on simple work-related decisions, 2) making judgments on complex work-related decisions, 3) interacting appropriately with the public, and 4) interacting appropriately with supervisors, and interacting appropriately with co-workers. Tr. 541-551.

On October 8, 2009, Plaintiff presented in the emergency room with complaints of depression and suicidal ideation. Tr. 338-353. Records indicate she had attempted to overdose on Lamictal, but then self induced vomiting after taking the pills. The following day, she was admitted to PsycHealth at Hot Springs County Medical Center. Tr. 367-369. Plaintiff remained hospitalized for two days. She was restarted on her home medications, including a higher dosage of Lamictal, and the Zoloft was discontinued. On October 11, 2009, it was believed that Plaintiff had achieved her maximum benefit from inpatient benefit and she was released home.

On June 7, 2010, Plaintiff returned to Dr. Kralik for a second mental status exam. Again, she diagnosed her with ADHD (provisionally combined type) and personality disorder, and estimated her current GAF to be between 45 and 55. She found her to be moderately impaired with regard to communicating and interacting in a socially adequate manner, coping with the typical mental/cognitive demands of basic work, attending and sustaining concentration on basic tasks seems, and completing work-like tasks within an acceptable time frame. However, Dr. Kralik concluded Plaintiff's capacity to sustain persistence in completing tasks was significantly impaired for occupational purposes. She also reiterated her opinion that Plaintiff was suffering from ADHD, and that this combined with her

---

[2]Plaintiff described a fantasy about kidnaping her boyfriend's son to get back at him for not leaving his wife for her, which was bizarre and suggestive of extremely poor judgment.

immature, dramatic cluster B personality features was likely the best explanation for the variability in her affective and behavioral self-regulation issues and the academic, occupational and functional performance inconsistencies noted and reported.  Further, Dr. Kralik noted that Plaintiff's judgment was poor and she tended to sabotage her own employment by seeking out jobs that were not in line with her purported needs, interests, and/or limitations and holding out unrealistic hopes of working for the FBI or CIA.  Malingering and/or exaggeration remained a possibility, as she believed Plaintiff was selective in reporting some of her more bizarre antics.

From November 2009 until September 2010, Plaintiff was treated at Western Arkansas Counseling and Guidance Center ("WACGC").  Dr. Jerry Stearman, a licensed psychological examiner, conducted Plaintiff's counseling sessions while Dr. Terrell Bishop handled her medication management appointments.  Tr. 386-481, 464-465.  Due to her mood complaints, she was initially diagnosed with bipolar disorder, probable borderline mental retardation, and poor impulse control.  However, her diagnoses were quickly changed to depressive disorder and borderline personality disorder.  Notes from counseling sessions reveal that Plaintiff tended to use her therapy sessions to "shock and awe" the therapist with regard to her personal life and intimate relationships, rather than talk about changing her life.  Tr. 387, 389, 457.  She also appeared to be immature and tended to shrug off responsibility by getting others to tell her what to do, rather than attempting to make smart decisions on her own.  And, she required constant reassurance, even when her own judgment was warning her to make smart decisions.  Dr. Stearman was of the opinion that Plaintiff exhibited deficient social skills and her ability to understand at least simple instructions, persist, and complete routine/simple tasks in a timely manner was impaired by limitations in her ability to comprehend and apply instructions.

Medication management notes from Dr. Bishop also indicate that Plaintiff's medications were only moderately effective at treating her targeted symptoms.  And, Mr. Stearman noted that Plaintiff consistently exerted a lot of effort to be social, but it often seemed to be self destructive and not geared

toward healthy, stable relationships.  Tr. 391, 455.  In November 2008, she indicated that she was attracted to her attorney, but that his secretary would not let her see him.  Tr. 386, 404-408.  In early 2010, Plaintiff stated that she had met a man that she was considering as a prospective suitor, but he decided to become involved with another woman.  Tr. 459.  This made her angry, and she stated that she had contemplated doing something passive-aggressive.  She did eventually become involved in a relationship, but in August 2010, the boyfriend ended the relationship.  Tr. 478-479.  Plaintiff did not take it well and began harassing him.  Although he obtained a restraining order against her, she continued to email him and indicated that she would play "hard ball" with him legally if need be.[3] Tr. 480-481. Tr. 478-479.

After reviewing the record, the undersigned is concerned that the RFC assessment determined by the ALJ does not accurately reflect all of Plaintiff's mental limitations.  Specifically, records from her treating doctor and therapist indicate that her medication was only moderately effective at treating her symptoms, and therapy notes reveal that she continued to experience many of the hallmark symptoms of borderline personality disorder, in spite of her medication.  While we note the Government's argument that she did not take her medication as prescribed, we can find only one record that indicates she refused to increase her dosage of Seroquel as directed due to the weight gain and other side effects associated with this medication.  Tr. 480-481.  Clearly, this does not warrant that Plaintiff was noncompliant with treatment.

Further, in combination, the mental health examiners who examined Plaintiff determined that she would have marked/significant limitations with regard to sustaining persistence in completing tasks, making judgments on simple work-related decisions, making judgments on complex work-related decisions, interacting appropriately with the public, and interacting appropriately with supervisors, and

---

[3]It appears that Plaintiff had been charged with harassment on at least two previous occasions, and in both instances the boyfriends were married.

interacting appropriately with co-workers.  And, her treating therapist concluded she would be limited with regard to her ability to understand at least simple instructions, persist, and complete routine/simple tasks in a timely manner due to limitations in her ability to comprehend and apply instructions.  While we do note Dr. Kralik's statement that malingering/exaggeration was suspect, we also note her indication that these symptoms were likely associated with Plaintiff's immaturity and dramatic personality features. Accordingly, we do not find substantial evidence to support the ALJ's RFC determination in this case and believe that remand is necessary to allow the ALJ to render a more accurate RFC assessment.

On remand, the ALJ is also ordered to obtain RFC assessments from Drs. Stearman and Bishop, as the record contains no assessments from treating physicians.  *Chitwood v. Bowen*, 788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

**V.      Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and recommend that the case be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 20th day of September 2012.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)